Argued January 20, affirmed January 31, rehearing denied February 28, 1928.

# MRS. ESTELLA KELLEY *v*. H. W. MEYERS, SUPERINTENDENT.

(263 Pac. 903.)

**Habeas Corpus—Judgment of Court of General or Special Jurisdiction is not Reviewable on Habeas Corpus Unless Void (Or. L., §§ 628, 641, 643).**

1. Judgment of court of general or special and limited jurisdiction is reviewable upon *habeas corpus* only where judgment is absolutely void as without jurisdiction, and in absence of such showing no relief can be granted petitioner under Sections 628, 641, 643, Or. L.

**Judgment—Jurisdiction of Court to Enter Judgment is Always Subject to Inquiry.**

2. Question of jurisdiction of court to enter judgment may always be inquired into.

**Constitutional Law—That Criminal Statute has not Been Attacked as Unconstitutional in Appeals Taken from Convictions Thereunder is Persuasive as to Its Validity.**

3. Fact that criminal statute has been in effect over long period and that constitutionality was never attacked in appeals taken from convictions thereunder, though not controlling, is persuasive of its constitutionality.

**Criminal Law—Statute Varying Punishment for Assisting Prisoner's Escape According to Punishment Inflicted for Crime With Which Prisoner Assisted was Charged Held not Unconstitutional as Inflicting Cruel and Unusual Punishment or Punishment not Proportioned to Offense (Or. L., §§ 2034, 2035; Const., Art. I, § 16).**

4. Sections 2034, 2035, Or. L., denouncing crime of aiding escape of prisoner and fixing penalties varying in severity according to extent of punishment which person whose escape was intended or effected would receive, *held* not unconstitutional as providing cruel or unusual punishment or punishment not proportioned to the offense in violation of Constitution, Article I, Section 16, since classification of punishment based upon difference in degree of crime with which escaped prisoner was charged is reasonable.

---

3. Long acquiescence in validity of statute as affecting constitutionality, see notes in 16 Ann. Cas. 877; Ann. Cas. 1912A, 505.

4. What is cruel and unusual punishment, see notes in Ann. Cas. 1918B, 396; 35 L. R. A. 560. See, also, 8 R. C. L. 262.

**Constitutional Law—Statute is Presumed Valid Until Declared Unconstitutional in Judicial Proceeding.**

5. Until statute is declared unconstitutional in judicial proceeding, presumption is that the statute is valid.

**Habeas Corpus—Sole Remedy to Test Constitutionality of Statute Under Which Prisoner Serving Sentence was Legally Convicted was by Habeas Corpus.**

6. Sole remedy to test constitutionality of criminal statute, by one convicted thereunder by court of competent jurisdiction on his own plea of guilty and legally sentenced and serving sentence under judgment of imprisonment, was by writ of *habeas corpus*.

**Escape—Alleged Unconstitutionality of Statute Under Which Prisoner was Convicted Held not to Justify Escape or to Warrant Assisting Escape of Other Prisoners (Or. L., § 2035—1).**

7. Even if statute under which prisoner was convicted was unconstitutional, such fact did not afford justification to prisoner to make escape prior to judicial determination of unconstitutionality or to assist escape of others legally confined in penitentiary, since latter act was felony under Section 2035—1, Or. L.

**Habeas Corpus—Habeas Corpus Held Ineffective to Secure Release of Petitioner Serving Sentence Under Legal Judgment of Court Having Jurisdiction.**

8. Where court had jurisdiction to try petitioner for murder of officer while effecting escape and to sentence him under verdict of guilty, no authority existed for issuance of writ of *habeas corpus* to release petitioner from custody under such conviction.

---

Constitutional Law, 12 **C. J.**, p. 798, n. 55.
Criminal Law, 16 **C. J.**, p. 1353, n. 96, p. 1355, n. 28.
Escape, 21 **C. J.**, p. 832, n. 30 New, p. 836, n. 47.
Habeas Corpus, 29 **C. J.**, p. 56, n. 56, 58, 59.

From Marion: L. H. McMahan, Judge.

In Banc.

AFFIRMED.     REHEARING DENIED.

For appellant there was a brief over the names of *Mr. Will R. King, Mr. John M. Pipes* and *Mr. Geo. A. Pipes,* with an oral argument by *Mr. Martin L. Pipes.*

---

6. Determination on *habeas corpus* of constitutionality of statute under which person is held, see note in 3 **Ann. Cas.** 581. See, also, 12 **R. C. L.** 1198.

7. Escape from jail or prison when imprisonment wholly illegal and void, see note in 15 **L. R. A.** 190. See, also, 10 **R. C. L.** 621. Justification of prison breach, see note in 52 **L. R. A. (N. S.)** 369. See, also, 10 **R. C. L.** 581.

For respondents there was a brief over the names of *Mr. I. H. Van Winkle,* Attorney General, and *Mr. Allan G. Carson,* with oral arguments by *Mr. Willis S. Moore,* Assistant Attorney General, and *Mr. John H. Carson,* District Attorney.

RAND, C. J.—This is an appeal from a judgment of the Circuit Court for Marion County, dismissing a writ of *habeas corpus.* It appears from the record that Ellsworth Kelley, the person in whose behalf the writ was sought, had been convicted on his own plea of guilty of the crime, defined by Section 2034, Or. L., of aiding a prisoner to escape from the county jail of Josephine County and that for said crime he had been sentenced to serve in the Oregon State Penitentiary for a term of twenty years. While so imprisoned, he participated with three other prisoners in an attempt to effect an escape in which he and two of the others were successful. While making such escape, John Sweeney, one of the guards, was killed. Upon being recaptured, Kelley was indicted for the murder of Sweeney and upon trial for said offense was convicted of murder in the first degree and sentenced to be hanged. Upon an appeal therefrom, that sentence and judgment was affirmed by this court: 118 Or. 397 (247 Pac. 146). A transcript of the record of this court in said cause was then brought into the Supreme Court of the United States (273 U. S. 589, 71 L. Ed. 790, 47 Sup. Ct. Rep. 504), by virtue of a writ of error and, after a consideration thereof by that court, the writ of error was dismissed for want of jurisdiction. Upon receipt of the mandate of the Supreme Court of the United States, it was here filed and entered of record and the mandate of this court was then issued, remanding the cause to the Circuit

Court for Marion County with directions to proceed in executing the sentence and judgment against Kelley, and pursuant thereto judgment of death was again pronounced against him and a warrant was duly issued, directing that Kelley be delivered to the superintendent of the Oregon State Penitentiary and appointing August 19, 1927, as the day upon which the judgment was to be executed. Two days before the time set for said execution, the writ in question was issued by one of the judges of the Circuit Court for Marion County and upon final hearing thereof was dismissed by the judge who issued the writ.

It is contended that Kelley is entitled to have the writ sustained and to be discharged from custody upon the ground that Sections 2034 and 2035, Or. L., which define, and prescribe the penalty of, the crime for the commission of which he was first convicted and imprisoned, are unconstitutional because violative of Article I, Section 16, of the Constitution of this state which provides that: "Cruel and unusual punishments shall not be inflicted but all penalties shall be proportioned to the offense." Based upon the assumption that the provisions of these statutes were unconstitutional, it is, in effect, contended that Kelley's imprisonment in the penitentiary was without any authority of law and that he had the right to escape therefrom, and that if it became necessary to take human life in order to enable him to make such escape he could do so without being guilty of any crime. The sole object of the writ is to secure the discharge of Kelley from custody and if there can be any efficacy in the writ that result alone must follow, and this would necessitate a determination that both convictions were absolutely void and of no effect whatever.

In this state the statute expressly provides that:
"Persons imprisoned or restrained by virtue of the
judgment or decree of a competent tribunal of civil
or criminal jurisdiction, or by virtue of an execution
issued upon such judgment or decree" shall not be
allowed to prosecute the writ: Section 628, Or. L.
It also declares that: "It shall be the duty of the
court or judge forthwith to remand such party if it
shall appear that he is legally detained in custody.
* * By virtue of the judgment or decree of any
competent court of civil or criminal jurisdiction, or
of any execution issued upon such judgment or decree;
* * and, That the time during which such party may
be legally detained has not expired": Section 641,
Or. L. Again, the statute provides: "But no court or
judge, on the return of a writ of *habeas corpus,* has
power to inquire into the legality or justice of any
order, judgment or process specified in Section 628":
Section 643, Or. L.

1, 2. The effect to be given to these provisions of
the statute has been under consideration by this court
in numerous cases and it has been uniformly held that
unless it shall be made to appear that the judgment
or process upon which the petitioner is detained is
absolutely void, no relief can be had under a writ of
*habeas corpus.* See *Ex parte Foster,* 69 Or. 319 (138
Pac. 849), and cases there cited. In that case this
court quoted with approval the following excerpt
from *People* v. *Liscomb,* 60 N. Y. 559 (19 Am. Rep.
211):

"If the process is valid on its face, it will be
deemed *prima facie,* and the prisoner must assume
the burden of impeaching its validity by showing a
want of jurisdiction. Error, irregularity or want of
form is no objection; nor is any defect which may be
amended or remedied by the court from which it

issues. If there was no legal power to render the judgment or decree, or issue the process, there was no competent court, and consequently no judgment or process. All is *coram non judice* and void.''

Under these authorities and the rule which prevails everywhere, it is settled law that the judgment of a court of general or special and limited jurisdiction is reviewable upon *habeas corpus* only when it is void and that no relief can be granted to the petitioner under the writ unless it is void. In such a case the only question presented for consideration is one of jurisdiction which may always be inquired into. It follows, therefore, that no relief can be obtained under this writ unless the judgment and sentence of the Circuit Court for Josephine County, as well as Kelley's subsequent conviction and sentence for the murder of Sweeney by the Circuit Court for Marion County, were wholly without authority of law and void for want of jurisdiction in said courts and that if either of said courts had jurisdiction, then his imprisonment at this time is legal and the writ must be denied.

The contention here is that Section 2034, Or. L., defining the crime for which Kelley was first convicted, because of the sentence which must be imposed under Section 2035, Or. L., renders both sections of the statute unconstitutional and deprives the Circuit Court for Josephine County of jurisdiction to try him for said offense or to render judgment in the action. If these sections are unconstitutional, the law is void and an offense created by them is not a crime and a conviction under them cannot be a legal cause of imprisonment, for no court can acquire jurisdiction to try a person for acts which are made criminal only by an unconstitutional law.

3, 4. The statutes in question have been on the statute books since 1864 and cases have arisen under them where convictions have been had and appeals taken to this court, and in none of those cases was it ever suggested that these statutes were unconstitutional. While this is not in any way controlling yet it is persuasive of their constitutionality. The sole ground for the contention that these sections of the statute are unconstitutional is that the penalties prescribed in Section 2035, Or. L., for the offense defined in Section 2034, Or. L., are cruel and unusual and not proportioned to the offense. Section 2035 provides that:

"If the person whose escape was intended or effected was committed or detained upon a charge or conviction of a crime punishable with death or imprisonment for life, the punishment therefor shall be imprisonment in the penitentiary not less than five nor more than twenty years; but if the person whose escape was intended or effected was committed or detained upon a charge or conviction of a crime not so punishable, the punishment therefor shall be the same as that provided by law for the crime with which such person was charged or convicted; and in case the person whose escape was intended or effected was in custody or confinement upon civil process, or otherwise than upon a charge or conviction of crime, the punishment therefor shall be imprisonment in the county jail not less than three months nor more than one year, or a fine not less than $100 nor more than $500."

It is clear that none of the penalties provided for by Section 2035, Or. L., are cruel or unusual, or not proportioned to the offense as required by the Constitution. The penalties provided for by Section 2035, Or. L., are divided into three classes: First, where the prisoner whose escape is sought is held upon a charge

or conviction of a crime punishable by death or imprisonment for life; second, where such prisoner is held upon a charge or conviction for a felony or other crime; and, third, where he is being held upon civil process or otherwise than for some crime. In cases of the first class the penalty is imprisonment in the penitentiary for from five to twenty years. In the second class the penalty is that which is provided by law for the particular crime with which the prisoner whose escape was sought is charged or of which he has been convicted. In cases of the third class the penalty is by fine or imprisonment in the county jail. It was as much within the power of the legislature to provide that the penalty to be imposed upon a conviction for an offense coming within the second class should be the same as that provided by law for the offense with which the prisoner whose escape was sought was charged or of which he had been convicted, as it was for the legislature to prescribe that penalty for the crime for which the prisoner was being held or had been convicted. It had as much power to impose a penalty for assisting a prisoner to escape as it had to impose a penalty for the particular crime with which such prisoner was charged, and to make the penalty the same in both instances or a different penalty as, in its discretion, it should see fit. It is a more serious crime and one far more dangerous to the public to effect the escape of a prisoner who is charged with or has been convicted of highway robbery than of one who has been merely charged or convicted of a misdemeanor. While it is true that the crime of assisting a prisoner to escape, regardless of the gravity of the offense with which the prisoner is charged, may be committed by the same identical means, there is a difference in the

enormity of the offense, depending upon the atrocity of the crime with which the prisoner is charged and a recognition by the legislature of this difference in prescribing a different punishment in one case from that in another case is not arbitrary but is based upon the difference of the degree of the crime with which the prisoner whose escape was sought was charged, and hence the classification in the penalties prescribed by this statute does not contravene any of the requirements of the Constitution.

Petitioner cites *In re Mallon,* 16 Idaho, 737 (102 Pac. 374, 22 L. R. A. (N. S.) 1123), as an authority in support of the contention that Section 2035 of our Code is unconstitutional. A statute of that state made it a criminal offense for a prisoner confined in the penitentiary to escape and the crime was made punishable by imprisonment for a term equal in length to that which he was serving at the time of his escape. The statute was held to be unconstitutional because the penalties prescribed were based upon an unreasonable and arbitrary classification. So far as the prisoner making the escape was concerned, it could be no more criminal upon his part for one who was serving under a sentence of two years to escape than for one who was serving under a sentence of one year, and, since there was no proper relation between the crime and the penalties to be imposed, the classification was purely arbitrary. That case is not an authority here because the difference in the penalties to be imposed under our statute has a proper relation to the enormity of the offense committed or attempted and by the penalties prescribed recognizes the distinction between aiding one prisoner to escape who is charged with a slight offense and one who is charged with a more serious offense. Hence, while we agree with both the reasoning and the conclusion reached

by the court in that case, nothing said there is authoritative upon the question under consideration here.

5–7. If the statute under which Kelley had been convicted and was serving at the time of his escape had been unconstitutional as claimed, it could not have afforded any justification to Kelley to make an escape. It had not been declared to be unconstitutional in any judicial proceeding and, until so declared, the presumption was that the statute was constitutional. He had been convicted on his own plea of guilty by a court of competent jurisdiction and had been regularly sentenced and was serving under a judgment of imprisonment, a certified copy of which together with his body had been delivered to the superintendent and wardens of the penitentiary. Under such circumstances, if he had desired to have the constitutionality of the statute determined, his sole remedy would have been to sue out a writ of *habeas corpus* and, in that proceeding, to have had the constitutionality of the statute judicially determined. Instead of pursuing his legal remedy, he entered into a criminal conspiracy with other prisoners, who at the time it is admitted were legally imprisoned, to effect the escape of all, and, in the execution of that conspiracy and while they were all engaged in carrying out their unlawful purpose, one of them shot and killed Sweeney.

If Kelley's confinement had been illegal, his acts in aiding the escape of others, who were legally confined, was in itself a felony punishable by imprisonment in the penitentiary. Section 2035—1, Or. L., makes it a felony for any person who is confined in the state penitentiary to escape or attempt to escape therefrom, or to assist any other person imprisoned therein in making an escape or an attempt to escape.

8. There is no pretense that the Circuit Court for
Marion County was without jurisdiction to try Kelley
for the murder of Sweeney or that his present im-
prisonment under the judgment of that court is in
any way illegal. There was, therefore, no authority
in law for the issuance in this case of a writ of *habeas
corpus.* The Circuit Court had no authority to issue
the writ in the first instance and its subsequent dis-
missal was proper. Its order dismissing the writ is,
therefore, affirmed.

AFFIRMED.    REHEARING DENIED.